780 P.2d 633

**Audra FASULO, Joseph A. Fasulo and Margaret Fasulo, Plaintiffs–Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellee.**

No. 18244.

Supreme Court of New Mexico.

Oct. 5, 1989.

Rehearing Denied Oct. 25, 1989.

James T. Roach and Janet Santillanes, Albuquerque, for plaintiffs-appellants.

James B. Cooney, Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, for defendant-appellee.

OPINION

RANSOM, Justice.

The Fasulos brought a declaratory judgment action against their insurance company, State Farm Mutual Automobile Insurance Company, seeking a declaration that their State Farm policies gave them $75,000 of underinsured motorist coverage as to each underinsured motorist whose concurrent negligence caused injury to Audra Fasulo. State Farm filed a motion to dismiss and the Fasulos filed a motion for summary judgment. After hearing arguments, the trial court granted State Farm's motion to dismiss. The Fasulos have appealed. We affirm.

For purposes of a motion to dismiss under SCRA 1986, 1–012(B)(6), all well-pleaded facts in the complaint are taken as true. *DeBaca, Inc. v. Montoya*, 91 N.M. 419, 575 P.2d 603 (1978). The relevant facts are as follows. On January 19, 1986, Audra Fasulo was a passenger on a motorcycle driven by Dennis Trujillo. Dennis was killed and Audra sustained serious injuries when the motorcycle was struck by a pickup truck driven by Vincent Wiberg who ran a stop sign. Trujillo and Wiberg were both negligent. The proportionate fault of each is not known nor determinative of this appeal. Both had automobile liability insurance with policy limits of $25,000. Each paid the Fasulos the limits of his liability coverage.

The Fasulos carried three automobile insurance policies with State Farm. Each of those three policies provided $25,000 for damages caused by an underinsured motorist. By stacking those three policies the Fasulos had $75,000 of underinsured motorist (UIM) coverage. The Fasulos requested State Farm to pay them $50,000 for the damages caused by Trujillo and $50,000 for the damages caused by Wiberg. State Farm paid its insureds $25,000, offsetting the $50,000 received from the two tortfeasors' liability proceeds against the $75,000 UIM coverage.

At issue is whether, in determining the underinsurance benefits due the Fasulos from State Farm, the trial court correctly

offset the underinsurance coverage of $75,-000 by the sum of liability limits under the coverage of both tortfeasors. To resolve this issue, we look to NMSA 1978, Section 66–5–301(B) (Repl.Pamp.1984). That section states that:

> "[U]nderinsured motorist" means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage.

The Fasulos assert that each negligent driver should be examined separately to determine the amount each is underinsured. The Fasulos maintain that Trujillo and Wiberg are underinsured by $50,000 each.[1] Consequently, the Fasulos claim that State Farm should pay $100,000; or, at a minimum, $75,000, the limits of the UIM coverage. State Farm argues that the liability proceeds of each underinsured tortfeasor should be aggregated and that sum subtracted from the limits of the underinsured motorist coverage.

In support of their respective arguments, each party directs our attention to decisions from other jurisdictions. State Farm cites us to *Nikiper v. Motor Club of America Cos.,* 232 N.J.Super. 393, 557 A.2d 332 (1989), which held that a UIM carrier can offset all liability proceeds recovered by the injured insured before it must pay out under the insured's UIM coverage. The underinsured motorist statute at issue provided that "[t]he limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds." The New Jersey court concluded that use of the word "all" evinced a legislative intent "to reduce the available UIM coverage to the extent that third-party liability recovery [is] available." *Id.* at 398, 557 A.2d at 335. "[W]e find nothing in the statutory language to suggest that the limit of UIM coverage should

be separately and individually available to a claimant as to each distinct joint tortfeasor." *Id.* State Farm argues that the same result is compelled by use in Section 66–5–301(B) of the similar phrase, "all bodily injury liability insurance applicable at the time of the accident."

The Fasulos rely upon *Nationwide Mutual Insurance Co. v. Scott,* 234 Va. 573, 363 S.E.2d 703 (1988), which held that coverage for each underinsured vehicle must be considered separately and that the UIM carrier would be liable for the accumulated amount of underinsurance, not to exceed the limits of the policy. In *Scott,* the plaintiff suffered damages in excess of $1,000,-000 in a collision between two automobiles. Both drivers had liability insurance, one in the amount of $50,000 and the other in the amount of $25,000. Scott's UIM carrier argued that it owed only $25,000, the difference between Scott's underinsured policy limit of $100,000 and the aggregate of liability proceeds available to Scott from the tortfeasors. The court disagreed and determined that as to one motorist Scott was underinsured by $50,000 and as to the other Scott was underinsured by $75,000, for a total of $125,000. Therefore, Nationwide was liable to the plaintiff for $100,-000, the policy limit of her UIM coverage.

The *Scott* court focused upon the legislature's definition of "underinsured vehicle." "A motor vehicle is underinsured when * * * the total amount of * * * coverage applicable to [its] operation * * * is less than the total of [UIM] coverage afforded any person injured as a result of the operation * * * of such vehicle." *Id.* at 576, 363 S.E.2d at 705. The court concluded that the legislature intended to view each tortfeasor separately to determine his underinsured status as compared to the injured insured. The court decided that if the legislature "had intended the obligation under an underinsurance endorsement to be offset by the aggregate of obligations due a claimant under multiple liability policies insuring multiple vehicles, it would have in-

---

1. For the purpose of considering this argument, we assume that the proportionate liability of each tortfeasor exceeds $75,000.

cluded the plural as well as the singular form in its definition of the term 'underinsured'." *Id.* at 577, 363 S.E.2d at 705.

In reviewing each court's construction of its statute, we find neither decision provides the definitive answer urged by the respective parties here. With respect to the use of the word "all" to modify "bodily liability insurance," our statute uses that phrase to define an underinsured motorist as an operator of a motor vehicle of which the sum of the limits under all applicable insurance is less than the insured's UIM coverage. Section 66–5–301(B) does not contain a provision similar to the limits of available coverage provision construed by the *Nikiper* court. We believe in the context of our statute "all" refers to the liability proceeds available to the underinsured motorist whose status is being defined.

With respect to the reasoning in *Scott*, this Court has recognized that use of a noun in its singular form in a statute does not preclude a reading of the noun in its plural form. *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 219, 704 P.2d 1092, 1095 (1985). " '[W]ords importing the singular number may be extended to several persons or things' unless such a construction would be 'inconsistent with the manifest intent of the Legislature or repugnant to the context of the statute'." *Id.* (quoting NMSA 1978, § 12–2–2(B) (Repl.Pamp.1988)). If the legislature had intended to treat each operator as a separate underinsured motorist to the extent his or her motor vehicle liability coverage was less than his or her proportionate liability for concurrent fault, it could have said so. We think that, absent some expression to the contrary, we cannot assume the legislature intended to exclude the plural form in defining an operator.

At oral argument, counsel for Fasulos was asked whether the exclusively singular construction would not subject the UIM insurer to liability for an indefinite multiple of the stated UIM limits depending upon the number of concurrent tortfeasors, limit-

ed only by the proportionate liability and insurance proceeds available from each. The response was that when the policy provided for liability coverage for all claims in double the amount of the coverage for the claim of any one person, then the reasonable expectation of the insured would be that UIM coverage could not be aggregated with respect to multiple tortfeasors in an amount in excess of double the stated coverage. This argument only tends to make the construction of the statute advocated by the Fasulos less persuasive to us. It is a non sequitur to argue that if the extent of coverage for multiple liability claims is specified in the insurance policy to be twice the coverage for a single claim, then UIM coverage allowed by statute for damages caused by multiple tortfeasors is limited to twice the UIM coverage specified.

Although the Virginia Supreme Court's construction of its statute has a certain appeal, especially when one considers that under comparative negligence and the abrogation of joint and several liability[2] the liability of each party involved in an accident is separately assessed in terms of his or her proportionate fault,[3] the question of legislative intent manifested by Section 66–5–301(B) is not before us as a novel question of statutory construction.

█ In *Schmick*, this Court previously articulated the legislative intent of Section 66–5–301(B). Although *Schmick* did not address specifically the issue before us here, we find that decision controls the disposition of this case. The *Schmick* court concluded that "[o]ur statute limits the insured's recovery to the amount of underinsured motorist coverage purchased for the insured's benefit; that amount will be paid in part by the tortfeasor's liability carrier and the remainder by the insured's uninsured motorist insurance carrier." *Id.* at 223, 704 P.2d at 1099. *Schmick* distinguishes statutes under which "the insured's total damages, and not the amount

---

2. *Bartlett v. New Mexico Welding Supply, Inc.,* 98 N.M. 152, 646 P.2d 579 (Ct.App.), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982).

3. *See Wilson v. Galt,* 100 N.M. 227, 232, 668 P.2d 1104, 1109 (Ct.App.), *cert. quashed,* 100 N.M. 192, 668 P.2d 308 (1983).

of uninsured motorist coverage purchased for his benefit, provide the ceiling on recovery." *Id.* The purpose of our statute is to assure that, in the event of an accident with an underinsured vehicle, an insured motorist entitled to compensation will receive at least the sum certain in underinsurance coverage purchased for his or her benefit. To the extent the amount of other available insurance proceeds from responsible underinsured tortfeasors does not equal or exceed the amount of coverage purchased, the UIM carrier must satisfy the difference.

We observe that the Legislature, in defining an underinsured motorist, set the minimum and maximum on the amount an insured can collect from his underinsured motorist insurance carrier. *See* § 66–5–301(B) * * *. [A]n insured collects from his underinsured motorist carrier the difference between his uninsured motorist coverage and the tortfeasor's liability coverage or the difference between his damages and the tortfeasor's liability coverage, whichever is less.

*Id.* at 222, 704 P.2d at 1098.

The Fasulos maintain that the intent of the statute is to place the insured in the same position she would have been in if the tortfeasors had liability insurance equal to her UIM coverage. *See Schmick,* 103 N.M. at 219, 704 P.2d at 1095; *Morro v. Farmers Ins. Group,* 106 N.M. 669, 670, 748 P.2d 512, 513 (1988). The Fasulos argue that if Trujillo and Wiberg each had $75,000 liability insurance, she would have recovered $150,000. In order to be placed in the same position, the Fasulos contend that State Farm is obligated to pay $100,000 to supplement the $50,000 received from the two tortfeasors.

However, they fail to address the language in *Schmick* that defines the position in which the insured party is to be placed in terms of the coverage amount purchased under his or her UIM policy. Under Section 66–5–301(B), the benefit an insured receives is the amount of underinsurance coverage purchased for his or her protection, and "that amount must be offset by

available liability proceeds." *Schmick,* 103 N.M. at 224, 704 P.2d at 1100. We discern no reason for distinguishing *Schmick* because it only addressed offset of a single tortfeasor's liability proceeds. Regardless of the number of underinsured tortfeasors at fault, the legislature intended that the injured party's underinsurance recovery should be limited to the amount of UIM coverage purchased, less available liability proceeds.

While we observe that the result reached by [other] courts is more equitable in that the injured insured collects all proceeds for which, ostensibly, a premium has been paid and has his or her damages compensated more fully, New Mexico's uninsured/underinsured motorist statute, as presently enacted by our Legislature does not allow for such recovery.

*Id.* On further reflection, we believe it no less "ostensible" that a premium has been paid for the difference between a sum certain and all other available coverage, than paid (a) for a sum certain to the extent damages are in excess of the uninsured liability of two or more tortfeasors, or (b) for an unspecified sum to be aggregated by the liability of an indefinite number of concurrent tortfeasors to the extent each may be insured for less than the underinsured coverage or the damages for which each is liable. Alternative (a) is based on a claim to a UIM recovery in the amount of the stated limits (the $75,000 claim), which is the exact claim rejected in *Schmick.* Alternative (b) is based on a claim to a UIM recovery in the amount of the stated limits as to each concurrent tortfeasor, limited only by the liability coverage available from each tortfeasor and his or her proportionate liability (the $100,000 claim). For the reasons stated above, we feel constrained to reject the exclusively singular construction of Section 66–5–301(B) that would allow application of UIM coverage separately as to each concurrent tortfeasor.

The Fasulos were entitled to a recovery of $75,000; Trujillo and Wiberg having paid $50,000 from their respective liability proceeds, State Farm was required to pay

and did pay the remaining $25,000 to reach the Fasulos' UIM coverage limit. The dismissal of the declaratory judgment is affirmed. Each party will pay its costs on appeal.

IT IS SO ORDERED.

LARRABEE, J., and STEVE HERRERA, District Judge, concur.