803 P.2d 243

**Josie ROMERO, Plaintiff–Appellant,**

v.

**DAIRYLAND INSURANCE COMPANY and Mitch Melnick, Defendants–Appellees.**

No. 18779.

Supreme Court of New Mexico.

Dec. 12, 1990.

James A. Burke, Santa Fe, for plaintiff-appellant.

Butt, Thornton & Baehr, David Houliston, Montgomery & Andrews, Robert Mroz, Albuquerque, for defendants-appellees.

## OPINION

RANSOM, Justice.

In this case we address the effect of a regulation of the New Mexico Department of Insurance regarding the rejection of uninsured motorist coverage. Josie Romero, the insured of Dairyland Insurance Company, claims that her written rejection of such coverage at the time of her application for automobile insurance was invalid. We agree. Applicable regulations of the superintendent of insurance require that a rejection of uninsured motorist coverage be attached to, or otherwise made a part of, the policy. We hold that unless the named insured rejects such coverage in a manner consistent with the requirements imposed by the superintendent of insurance, uninsured motorist coverage will be read into the insured's automobile liability insurance policy regardless of the intent of the parties or the fact that a premium has not been paid.

Josie Romero was seriously injured while riding as a passenger in a vehicle struck by an uninsured motorist. Dairyland denied uninsured motorist coverage. Romero sued Dairyland and its agent, Mitch Melnick, claiming in her suit against the latter that he was guilty of misrepresentation and breach of a fiduciary duty with respect to the signing of a rejection of uninsured motorist coverage in her application for insurance. Romero appeals from a summary judgment entered in favor of defendants.

Romero does not dispute that she signed the following rejection form at the time she applied for insurance.

UNINSURED MOTORISTS REJECTION

I have had Uninsured Motorists Coverage explained to me and fully understand it. I hereby reject such coverage and understand that my policy will not contain this coverage when issued or renewed. I also understand that I may add this coverage to my policy at any future date.

_____
Signature

_____
Date

However, the rejection form admittedly was not attached to the liability policy that the company subsequently issued. The uninsured motorist statute of the Motor Vehicle Code provides that no automobile liability policy shall be delivered unless uninsured motorist coverage is provided therein according to the rules and regulations promulgated by the superintendent of insurance, and under provisions filed with and approved by the superintendent. NMSA 1978, § 66-5-301(A) (Repl.Pamp. 1989). Subsection (C) of the uninsured motorist statute gives the named insured the right to reject uninsured motorist coverage. No particular manner of rejection is specified. In this regard the superintendent of insurance promulgated the following regulation:

*Rejection of Uninsured Motorist Coverage.* The rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 New Mexico Statutes Annotated, 1978 Compilation, must be endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance.

Regulations of the New Mexico Department of Insurance, Art. 5, Part 4, Chp. 66, Rule 1, § 5-1-4 (undated).

In addition to arguing that the rejection of uninsured motorist coverage did not comply with the regulations of the superintendent of insurance, because it was not made a part of the policy, Romero argues that her testimony establishes a triable is-

sue of fact on whether uninsured motorist coverage was explained to her, and whether she fully understood such coverage despite the express language to that effect in the application. Romero claims that she had no understanding of what she was signing. She claims the rejection of uninsured motorist coverage was not explained to her and she only signed various forms where indicated by the agent. Romero, a fifty-nine-year-old widow, was purchasing automobile insurance for the first time and did not at that time have a driver's license. She purchased minimum liability coverage consistent with the Mandatory Financial Responsibility Act. *See* NMSA 1978, §§ 66–5–201 to –5–239 (Repl.Pamp.1989). Because we find the rejection of uninsured motorist coverage was ineffective in that it did not comply with the regulations promulgated by the superintendent of insurance, we do not address whether there exists a genuine issue of material fact concerning Romero's state of mind when she signed the rejection form.

■ The uninsured motorist statute, Section 66–5–301, embodies a public policy of New Mexico to make uninsured motorist coverage a part of every automobile liability insurance policy issued in this state, with certain limited exceptions. The statute was intended to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists. *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 533 P.2d 100 (1975); *Sandoval v. Valdez*, 91 N.M. 705, 580 P.2d 131 (Ct.App.1978). Because we liberally interpret the statute in order to implement its remedial purpose, *Chavez*, 87 N.M. at 329, 533 P.2d at 102, language in the statute that provides for an exception to uninsured coverage should be construed strictly to protect the insured. *Cf. Roger v. Estate of Moulton*, 513 So.2d 1126, 1130 (La.1987); *Employers Casualty Co. v. Sloan*, 565 S.W.2d 580, 581 (Tex.Ct. App.1978).

To effectuate the purpose of the statute, the superintendent of insurance is granted the power to make rules and regulations. *Sandoval*, 91 N.M. at 709, 580 P.2d at 135

(Sutin, J., specially concurring). If not in conflict with legislative policy, legislatively authorized rules and regulations have the force of law. *See Jaramillo v. Fisher Controls Co.*, 102 N.M. 614, 698 P.2d 887 (Ct.App.), *cert. denied*, 102 N.M. 613, 698 P.2d 886 (1985). We have decided that the authority of the superintendent of insurance in this area is a lawful delegation of legislative authority to an administrative agency, justified by the impracticability of enacting comprehensive statutes relating to uninsured motorist coverage. *Willey v. Farmers Ins. Group*, 86 N.M. 325, 523 P.2d 1351 (1974) (recognizing that superintendent's regulations in this area must be consistent with legislative objectives in passing uninsured motorist statute), *rev'd on other grounds, Foundation Reserve Ins. Co. v. Marin*, 109 N.M. 533, 787 P.2d 452 (1990).

■ An insured may reject uninsured motorist coverage, but the rejection must satisfy the regulations promulgated by the superintendent of insurance. The rejection must be made a part of the policy by endorsement on the declarations sheet, by attachment of the written rejection to the policy, or by some other means that makes the rejection a part of the policy so as to clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived.

The regulation that the rejection be made a part of the policy delivered to the insured quite apparently is to ensure that the insured has affirmative evidence of the extent of coverage. Upon further reflection, consultation with other individuals, or after merely having an opportunity to review one's policy at home, an individual may well reconsider his or her rejection of uninsured motorist coverage. Providing affirmative evidence of the rejection of the coverage comports with a policy that any rejection of the coverage be knowingly and intelligently made. Any individual rejecting such coverage should remain well informed as to that decision. We find that the regulation of the superintendent of insurance furthers a legislative purpose to provide for the inclusion of uninsured mo-

torist coverage in every automobile liability policy unless the insured has knowingly and intelligently waived such coverage. For that reason uninsured motorist coverage will be read into an insured's liability policy when a rejection of such coverage does not comply with those regulations.

■ Here, Romero had no independent way of knowing what she had signed. The application was never attached to the policy; Romero was never given a copy of the application containing the rejection; and the declarations sheet that she later received made no mention of the rejection of uninsured motorist coverage. The only documentation of the rejection of uninsured motorist coverage consisted of two copies of Romero's application for insurance, one that stayed in the agent's files and another that was sent to Dairyland's home office. Under these circumstances we hold that the rejection of uninsured motorist coverage was invalid and ineffective as a matter of law.

Our conclusion that the rejection was invalid is consistent with the decisions of a number of other jurisdictions regarding nonconformance with administrative rules or statutory requirements for the rejection of uninsured motorist coverage. *See generally* Annotation, *Construction of Statutory Provision Governing Rejection or Waiver of Uninsured Motorist Coverage,* 55 A.L.R.3d 216 (1974). For example, in *Employers Casualty Co. v. Sloan,* 565 S.W.2d 580 (Tex.Ct.App.1978), the Texas Court of Civil Appeals concluded that an insured could not orally waive uninsured motorist coverage when the State Board of Insurance had adopted a rule that required a written rejection. The insured in that case had orally rejected the coverage and was fully aware that the policy did not specifically provide for uninsured motorist coverage. *See also Insurance Co. of N. Am. v. Thomas,* 337 So.2d 365 (Ala.Civ. App.1976) (oral rejection invalid when memorandum of insurance commissioner required rejection of uninsured motorist coverage to be in writing); *Northern Ins. Co. of New York v. Hiers,* 504 So.2d 1382 (Fla. Dist.Ct.App.1987) (although required, annu-al notice of coverage options neither was attached directly to premium notice nor incorporated in premium notice; therefore, annual notice of insured's option to request uninsured motorist coverage failed to comply with statutory requirements and no rejection of such option occurred), *review denied,* 513 So.2d 1062 (Fla.1987); *Orion Ins. Co. v. Socias,* 513 So.2d 233 (Fla.Dist.Ct. App.1987) (no waiver of uninsured motorist coverage when insurer failed to use required waiver form); *Harris v. United States Fidelity & Guar. Co.,* 569 F.2d 850 (5th Cir.1978) (upholding validity of Florida Department of Insurance requiring written rejection of uninsured motorist insurance coverage).

In Louisiana, under statutory requirements (since amended) very similar to the rule promulgated by the New Mexico superintendent of insurance, any rejection of uninsured motorist coverage had to be in writing and physically made a part of the policy. A number of Louisiana decisions held that a written rejection never *physically attached* to the policy was ineffective. *Roger v. Estate of Moulton,* 513 So.2d 1126 (La.1987); *Krantz v. State Farm Mut. Ins. Auto. Ins. Co.,* 496 So.2d 1162 (La.Ct.App.1986); *Manuel v. Manuel,* 443 So.2d 729 (La.Ct.App.1983); *Stroud v. Liberty Mut. Ins. Co.,* 429 So.2d 492 (La. Ct.App.), *writ denied,* 437 So.2d 1147 (Fla. 1983).

The above decisions and others also stand for the proposition that if the rejection of uninsured motorist coverage by the named insured is invalid, statutory provisions concerning uninsured motorist coverage will be read into his or her automobile liability insurance policy. *E.g., Employers Casualty Co.,* 565 S.W.2d at 583; *A.I.U. Ins. Co. v. Roberts,* 404 So.2d 948, 952 (La.1981); *Roger,* 513 So.2d at 1131–32 ("[When the rejection is invalid] [t]he law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment."); *Patrick v. Cherokee Ins. Co.,* 354 Pa.Super. 427, 512 A.2d 24 (1986).

■ Dairyland and Melnick argue Romero's acceptance and retention of the policy is conclusive under *State Farm Fire & Casualty Co. v. Price,* 101 N.M. 438, 684 P.2d 524 (Ct.App.), *cert. denied,* 101 N.M. 362, 683 P.2d 44 (1984).

First, the insured is under a duty to read his policy. Receipt and retention of an insurance policy without objection by one who has had an opportunity to examine it for a reasonable time is regarded as an acceptance of its terms. The insured is required to familiarize himself with its terms. Second, the insured, and not the insurance company, bears the burden of managing his business affairs, including insurance coverage.

*Id.* 101 N.M. at 446, 684 P.2d at 532 (citations omitted). Additionally, Dairyland points out that numerous courts hold that a written rejection on the application operates as an effective waiver of uninsured motorist coverage. *E.g., Koenig v. Mission Ins. Co.,* 106 Ariz. 75, 471 P.2d 271 (1970); *Baum v. Allstate Ins. Co.,* 496 So.2d 201 (Fla.Dist.Ct.App.1986); *Blalock v. Southern Ins. Co.,* 180 Ga.App. 319, 349 S.E.2d 32 (1986); *daSilva v. Equitable Fire & Marine Ins. Co.,* 106 R.I. 729, 263 A.2d 100 (1970). We find these cases only stand for the proposition that a written rejection may be enforceable where a statute or regulation merely requires a writing or is completely silent as to the manner of a rejection that the statute authorizes. None of these cases were decided under insurance regulations requiring the rejection be attached or made part of the policy that is delivered to the applicant such as is the case in New Mexico.[1]

■ Moreover, we cannot agree with Dairyland's contention that the policy issued Romero was sufficient to put the insured on notice that she had waived uninsured motorist coverage. The policy issued Romero states:

WHY A plain talk POLICY?

At Dairyland, we're always looking for new and better ways to serve your insurance needs. So when an opinion study found that many people objected to fine print and hard-to-read policies, we did something about it.

We created your Dairyland plain talk Policy.

Your insurance protection is important to you. That's why it's important for you to be able to read and understand your policy. Now you can.

The policy declarations sheet states:

These declarations describe the coverage included in your policy, and are considered part of that policy.

\*  \*  \*  \*  \*  \*

Coverages and Limits of Liability: We insure you only for the vehicle(s) described on this page, and only for those coverages which are shown below. The liability is limited by the terms of this policy.

Bodily Injury Liability: Each person/accident $25,000/$50,000.

Property Damage Liability: Each accident $10,000.

At the base of the declarations sheet appear the following endorsements and exclusions:

5480.00–117–1279 PLN TLK CAR POL
5480.29–328–1184 AMENDATORY END
5480.00–122–0678 DRIVER EXCL
5480.00–127–1178 NAM INS EXCL
5480.00–140–1279 HOUSE EXCL BRD

---

1. At oral argument Dairyland, for the first time, asserted that no private right of action was created to provide individual redress for any violation of the rules and regulations of the superintendent of insurance with regard to the rejection of uninsured motorist coverage. While we regard this contention to be untimely, we will point out that NMSA 1978, Section 59A–16–30 (Repl.Pamp.1988) creates a private right of action in any individual covered by Article 16 of the Insurance Code who has suffered damages from violations of that Section. Section 59A–16–3 forbids insurers from engaging in any practice prohibited as, or determined to be, unfair or deceptive. We believe the promulgated rules and regulations of the superintendent of insurance concerning the requisites for rejection of uninsured motorist coverage may well represent his conclusive determination that insurance practices that do not comply with those regulations are unfair and deceptive.

5480.00–150–1080 ALASKAN SUITS

There is no mention on the declarations sheet of any endorsement, rejection, or exclusion of uninsured motorist coverage and no further explanation of the above-cited codes is provided. Dairyland states that since the policy only shows that Romero had coverage for bodily injury and property damage, she should realize she did not have uninsured motorist coverage. Dairyland's agent states that the absence of uninsured motorist coverage is indicated on the declarations sheet by the absence of a premium for that coverage. We cannot agree that these cryptic codes and extended inferences should satisfy the regulation that the rejection of uninsured motorist coverage be made a part of the policy. If Romero were to turn to the endorsements in the Plain Talk Policy she would have read the following with reference to uninsured motorist coverage:

## UNINSURED MOTORIST INSURANCE

[Underlined in original.]

### Our Promise To You

We promise to pay the *damages you're* legally entitled to receive from the owner or operator of an uninsured *motor vehicle* because of bodily injury. We'll pay these *damages* for bodily injury *you* suffer in a *car accident while occupying a motor vehicle* or, as a pedestrian as a result of having been struck by an uninsured *motor vehicle.* [Emphasis in original.]

Given the realities of the automobile liability insurance business in which the unfamiliar terminology of a policy describes coverage under complex rights and obligations of personal injury and liability law, given an insured who is unsophisticated in business affairs, and given the public policy favoring insurance coverage for personal injury and liability arising from the operation of motor vehicles, we question whether the language quoted from *State Farm Fire & Casualty Co. v. Price* regarding the duty to read one's insurance policy can have very general application. The exception is the more appropriate rule as this Court has stated in the past.

We will not simply mechanically charge Mr. Pribble with the duty of reading and understanding the policy and certificate and then bar him from recovery by a literal application of its terms and provisions * * *. [W]e hold that Mr. Pribble * * * was only bound to make such examination of such documents as would be reasonable for him to do under the circumstances; that he will only be held to that which he would be thereby alerted; and if the language is such that a layman would not understand its full impact were he to attempt to plow through it, the documents will yield the maximum protection consistent with their language and the reasonable expectation of Mr. Pribble.

*Pribble v. Aetna Life Ins. Co.,* 84 N.M. 211, 216, 501 P.2d 255, 260 (1972), *appeal after remand,* 86 N.M. 299, 523 P.2d 543 (1974). In any event, as we recently stated in *Sanchez v. Herrera,* 109 N.M. 155, 783 P.2d 465 (1989), unambiguous exclusionary language is controlling only when not in conflict with public policy, as promulgated by the uninsured motorist statute and applicable regulations. *See also Padilla v. Dairyland Ins. Co.,* 109 N.M. 555, 787 P.2d 835 (1990); *Schmick v. State Farm Mut. Auto. Ins. Co.,* 103 N.M. 216, 704 P.2d 1092 (1985); *White v. Singleton,* 88 N.M. 262, 539 P.2d 1024 (Ct.App.1975). Public policy clearly favors uninsured motorist coverage for the protection of persons insured under automobile liability policies, and no rejection of uninsured motorist coverage is effective unless endorsed, attached, stamped or otherwise made a part of the policy.

The order of summary judgment in favor of Dairyland is reversed, and the cause is remanded to the district court for proceedings consistent with this opinion.

IT IS SO ORDERED.

SOSA, C.J., and BACA, J., concur.