923 P.2d 588

Lawrence KAISER, Plaintiff–Appellant,

v.

Imelda DeCARRERA, Ken Wereir, John Doe, and Windsor Insurance Company, Defendants–Appellees.

No. 23121.

Supreme Court of New Mexico.

Aug. 26, 1996.

Garcia Law Offices, Narciso Garcia, Jr., Albuquerque, for Appellant.

Miller, Stratvert, Torgerson & Schlenker, P.A., Leonard D. Sanchez, Rudolph Lucero, Albuquerque, for Appellees.

## OPINION

BACA, Chief Justice.

1. Appellant Lawrence Kaiser ("Kaiser") appeals an order granting summary judgment in favor of Appellee Windsor Insurance Company ("Windsor"). Kaiser had sued

Windsor for bad faith, alleging that Windsor failed to pay uninsured/underinsured motorist coverage ("UM/UIM coverage") benefits for injuries he suffered in a motorcycle accident. Windsor claimed that Kaiser did not carry an uninsured motorist policy because he signed a "Notice of Rejection of Uninsured/Underinsured Motorist Coverage." We address (1) whether signing a Notice of Rejection of Uninsured/Underinsured Motorist Coverage is sufficient to reject such coverage when the rejection is not "made a part of the policy of bodily injury and property damage insurance" as required by Section 5-1-4 of the Department of Insurance regulations; and (2) whether mailing the rejection notice alone is sufficient to satisfy the requirement that the rejection be made a part of the policy when the notice is returned to the insurance company and the insurance company has alternative means to contact its insured but does not utilize them. We note jurisdiction under SCRA 1986, 12-102(A)(1) (Repl.Pamp.1992) (appeals of cases sounding in contract taken to Supreme Court), and reverse.

## I.

2. On May 21, 1992, Kaiser completed an application to purchase automobile insurance with Windsor, including his residential address, his home telephone number, his motorcycle garaging address, and his employer's address. However, he did not specify his apartment number on the application. Also as part of this application, Kaiser signed a rejection notice, which provides:

> I understand the State requires that Family Protection against Uninsured/Underinsured Motorists Insurance be afforded me under my motor vehicle liability policy unless I specifically reject this coverage. Accordingly, I reject Family Protection against Uninsured/Underinsured Motorists Coverage and direct the Company to issue my policy without the said coverage.

3. On June 12, 1992, Windsor issued to Kaiser a copy of the Declarations Page and the insurance policy. Kaiser received the Declarations Page and the insurance policy at his home address as stated on the insurance application. The Declarations Page did not indicate that UM/UIM coverage was not included in the insurance policy, and the insurance policy did not contain the rejection notice. Kaiser claims he did not receive any other policies, amendments, or endorsements from Windsor.

4. On October 29, 1992, Windsor mailed an amended Declarations Page that stated, "NO UNINSURED/UNDERINSURED MOTORIST COVERAGE PROVIDED BY THIS POLICY," and an insurance policy that included the rejection notice. Windsor mailed the amended policy to the address that Kaiser provided on his insurance application. On November 4, 1992, the amended policy, intact in its envelope, was returned to Windsor with a Postal Service stamp that stated, "Return to Sender Large Complex Needs Apt. # Space #." Windsor did not attempt to send the amended policy again.

5. On March 4, 1993, Kaiser was involved in an automobile accident with Imelda DeCarrera. DeCarrera was uninsured at the time of the accident. Kaiser filed a complaint against DeCarrera, alleging negligence. Kaiser later amended his complaint to include a claim against Windsor, in which he alleged that he never rejected uninsured motorist coverage and that Windsor acted in bad faith by refusing to provide coverage. Windsor responded that Kaiser rejected UM/UIM coverage by signing the rejection notice. Windsor later filed a motion for summary judgment, arguing that Kaiser's rejection of UM/UIM coverage was within statutory guidelines and Department of Insurance regulations. The district court granted the motion for summary judgment, and Kaiser now appeals.

## II.A.

6. We address whether signing a rejection of UM/UIM coverage as part of an application for automobile insurance is sufficient to reject such coverage. Windsor argues that by signing the rejection notice, Kaiser informed Windsor that he did not want UM/UIM coverage and, by not paying for UM/UIM coverage, he had no expectation that his policy provided such coverage. We disagree with Windsor. In *Romero v.*

*Dairyland Insurance Co.,* 111 N.M. 154, 803 P.2d 243 (1990), we addressed this issue thoroughly and held that:

> [U]nless the named insured rejects [uninsured/underinsured motorist] coverage in a manner consistent with the requirements imposed by the superintendent of insurance, uninsured motorist coverage will be read into the insured's automobile liability insurance policy regardless of the intent of the parties or the fact that a premium has not been paid.

*Id.* at 155, 803 P.2d at 244. *Romero* is dispositive here.

■ 7. New Mexico requires that no automobile liability insurance policy shall be delivered unless the policy includes UM/UIM coverage. NMSA 1978, § 66–5–301(A) (Repl.Pamp.1994). In *Romero,* we recognized the strong public policy embodied in Section 66–5–301(A) to make UM/UIM "coverage a part of *every* automobile liability insurance policy." *Id.* at 156, 803 P.2d at 245 (emphasis added). The statute is intended "to protect individual members of the public against the hazard of culpable uninsured motorists." *Id.* The statute is interpreted liberally to implement that remedial purpose, and any exception will be strictly construed. *Id.*

■ 8. Nevertheless, an individual has the right to reject such coverage. Section 66–5–301(C). However, the rejection must be done in accordance with the rules and regulations promulgated by the superintendent of insurance. *Romero,* 111 N.M. at 155, 803 P.2d at 244. The superintendent of insurance has promulgated the following regulation that fixes the manner by which coverage may be rejected:

> *Rejection of Uninsured Motorist Coverage.* The rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66–5–301 New Mexico Statutes Annotated, 1978 Compilation, *must be endorsed, attached, stamped or otherwise made a part of the policy* of bodily injury and property damage insurance.

*Romero,* 111 N.M. at 155, 803 P.2d at 244 (quoting Regulations of the New Mexico Department of Insurance, Art. 5, Part 4, Ch. 66, Rule 1, § 5–1–4 (undated)) (emphasis added). This regulation is currently in effect and was in effect in 1992. Even though an insured may sign a rejection notice of UM/UIM coverage, that alone is not enough. The rejection notice must also be "endorsed, attached, stamped or otherwise made a part of the policy" to be effective. *Id.*

> The rejection must be made a part of the policy by endorsement on the declarations sheet, by attachment of the written rejection to the policy, or by some other means that makes the rejection a part of the policy so as to clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived.

*Id.* at 156, 803 P.2d at 245.

9. According to *Romero,* Section 5–1–4 of the insurance regulations helps "to ensure that the insured has affirmative evidence of the extent of coverage." *Id.* "Upon further reflection, consultation with other individuals, or after merely having an opportunity to review one's policy at home, an individual may well reconsider his or her rejection of uninsured motorist coverage." *Id.* The requirement that an insurance company provide the insured affirmative evidence of the rejection is consistent with the policy that such a rejection must be made knowingly and intelligently. *Id.*

10. Windsor attempts to distinguish *Romero* from the present case by contending that the determining factor in *Romero* was that the plaintiff simply did not understand that she rejected UM/UIM coverage but she had merely signed numerous forms at the direction of her insurance agent. Windsor argues that Kaiser fully understood that he was rejecting UM/UIM coverage and that he readily acknowledged that he directed Windsor to issue the policy without UM/UIM coverage. However, the distinction does not affect our application of Section 5–1–4 of the insurance regulations. As we noted in *Romero,* "[a]ny individual rejecting such coverage should remain well informed as to that decision." *Romero,* 111 N.M. at 156, 803 P.2d at 245. Section 5–1–4 recognizes the

fact that people reconsider their insurance coverage and provides the insured with affirmative evidence of the extent of coverage for *future* reference. Neither Josie Romero in *Romero* nor Kaiser in this case had affirmative evidence of the extent of their coverage, in violation of Section 5–1–4.

## B.

■ 11. Unlike Dairyland Insurance Company in *Romero,* however, Windsor attempted to mail a revised Declarations Page, which indicated that the policy did not include UM/UIM coverage, and the rejection notice. As it turned out, the envelope containing these items was undeliverable because it did not specify Kaiser's apartment number. Thus, the envelope was returned to Windsor. The question that arises is whether this attempt by Windsor makes any difference in applying *Romero* and Section 5–1–4. We hold that under the facts of this particular case, it does not.

12. Windsor attempts to distinguish *Romero* from this case by arguing that in *Romero,* the plaintiff did not do anything which would have precluded or hindered the delivery of the required rejection disclosures. Here, Kaiser provided Windsor with an incorrect address. Indeed, Kaiser did not specify his apartment number when he completed the application for insurance. However, because the original Declarations Page and insurance policy was in fact delivered by mail to his apartment in June 1992, Kaiser could not foresee that future correspondence would be returned. By contrast, Windsor, having the returned, stamped envelope, was aware of the incomplete address.

■ 13. Windsor further relies on NMSA 1978, Section 59A–18–29(D) (Repl.Pamp. 1995), to argue that Windsor did everything it was required to do when it sent the envelope to Kaiser's last address of record, and the fact that the envelope came back should not make a difference because Kaiser failed to notify Windsor of the correct address. Section 59A–18–29(D) provides that notice of cancellation of insurance is deemed given when it is addressed to the insured's last address of record and then deposited in a mail depository of the United States Postal Service. This statute, however, applies only to cancellation of an insurance policy and not to a rejection notice of UM/UIM coverage. As we have established in *Romero,* Section 66–5–301 embodies specific policies with regard to UM/UIM coverage. Those same policies do not apply when an insurance policy is being canceled by an insurance company.

14. We hold that Section 59A–18–29(D) or a similar rule, *see, e.g.,* SCRA 1986, 1–005(B) (Repl.Pamp.1992) (service of pleadings by mail complete upon mailing), does not control here. Under SCRA 1–005(B), for example, there is a presumption that a document is delivered upon mailing. *Myers v. Kapnison,* 93 N.M. 215, 216, 598 P.2d 1175, 1176 (Ct.App.1979) (addressing the "presumption of delivery of a document that has been 'properly mailed' "). This presumption helps eliminate false claims that a document was never received. *See Indiana ex rel. Lake County Dep't of Pub. Welfare v. Lake Superior Court,* 239 Ind. 652, 159 N.E.2d 849, 850 (1959) ("[A] party receiving a pleading through the mail could by the mere denial of the receipt thereof nullify and terminate the opposing party's right to further proceedings in the cause."). This presumption does not apply here. Section 5–1–4 unequivocally requires that a rejection notice *must be made a part of the policy,* thus indicating that mailing alone will not suffice. The requirement that the insured possess evidence of his or her rejection of UM/UIM coverage serves the policy identified in *Romero. See* 111 N.M. at 156, 803 P.2d at 245. "Providing affirmative evidence of the rejection of the coverage comports with a policy that any rejection of the coverage be knowingly and intelligently made. Any individual rejecting such coverage should remain well informed as to that decision." *Id.*

15. Further, we hold that the presumption that a document is delivered upon mailing should not apply here because the insurance carrier failed to comply with Section 5–1–4, even though it had the means to do so. After mailing the envelope containing the amended Declarations Page and insurance policy, Windsor received it back. The envelope was stamped by the Postal Service with a specific reason why it could not be deliv-

ered; there was no apartment number indicated. Although Windsor had a telephone number at which it could have contacted Kaiser in order to obtain his apartment number, there is no indication in the record that Windsor ever attempted to telephone Kaiser. Moreover, Windsor could have contacted Kaiser at one of the other two addresses listed on the application for insurance, but never attempted to do so.

16. Windsor apparently acknowledged that the rejection *must* be made a part of Kaiser's policy and realized that it had not yet complied. By attempting to forward the revised policy to Kaiser, Windsor apparently acknowledged that the rejection must be a part of Kaiser's insurance policy. When the envelope was returned with the Postal Service stamp, Windsor was on notice that it still had not complied with the regulatory requirements. Although it was aware of Section 5–1–4, Windsor nevertheless neglected to take any further steps to ensure that Kaiser received the amended copies.

### III.

17. In view of the strict mandate contained in NMSA 1978, Section 66–5–301(A), the public policy advanced by the statute, the terms of Section 5–1–4, and the purpose it serves, as articulated in *Romero*, we hold that Windsor's effort to deliver the rejection notice to Kaiser was insufficient. Accordingly, UM/UIM coverage will be read into Kaiser's automobile liability insurance policy. *Romero*, 111 N.M. at 155, 803 P.2d at 244. The judgment of the trial court is hereby reversed.

18. **IT IS SO ORDERED.**

RANSOM, MINZNER and McKINNON, JJ., concur.

FRANCHINI, J., dissents.

FRANCHINI, Justice (dissenting).

In my view the majority opinion incorrectly reverses a summary judgment for Windsor based upon *Romero v. Dairyland Insurance Co.*, 111 N.M. 154, 803 P.2d 243 (1990). This case is distinguishable from *Romero* in a number of significant respects.

In this case, Kaiser told Windsor, in writing, that he did not want uninsured/underinsured motorist coverage ("UM/UIM coverage"). He was never charged for the coverage nor did he pay for it. Unlike *Romero*, there is no indication whatsoever in this case that Kaiser was ever confused about what coverage he had purchased. Kaiser admits he signed the insurance policy and he knew it did not include UM/UIM coverage. Unlike *Romero*, here Windsor *issued* a declaration page incorporating Kaiser's rejection of UM/UIM coverage, which expressly stated that no UM/UIM coverage was provided.

Further Windsor mailed this notice of rejection to Kaiser's last known address, which was incomplete and therefore incorrect. This incomplete and incorrect address was given to Windsor by Kaiser himself. He had not listed his apartment number and the mailing containing the notice was returned to Windsor for not having a complete address. In my judgment the majority misplaces the fault or responsibility for the incomplete address upon the defendant rather than upon the plaintiff where it rightfully belongs. The majority opinion apparently stands for the questionable proposition that one who negligently provides an incomplete address and subsequently does not receive his mail can shift the blame to the sender of mail to whom the faulty address was originally given.

Windsor, by not attaching the rejection of UM/UIM coverage to the policy, has admittedly made a technical error. However, there is overwhelming evidence in this case of substantial compliance by Windsor with NMSA 1978, Section 66–5–301 (Repl.Pamp. 1994) and the attendant insurance regulations. *See* Regulations of the New Mexico Department of Insurance, Art. 5, Part 4, Ch. 66, Rule 1, § 5–1–4. Furthermore, the statute and regulations are basically notice provisions to ensure that the insured has affirmative evidence of the extent of coverage. *See* § 5–1–4. I do not believe the statutes and regulations were ever intended to be used by a plaintiff who knowingly and intelligently rejects UM/UIM coverage in the first instance and then reverses his position and makes a claim for that coverage when ten

months later he is injured by an uninsured motorist. This is what occurred here.

In *Romero*, the plaintiff claimed confusion and pressure. Further, Dairyland, the defendant in that case, never attempted *any* compliance with the statutes or regulations and was therefore correctly held responsible for its actions or lack thereof. Those facts are clearly absent as between Kaiser and Windsor in this case.

The public policies of this State are to (a) encourage the purchase of uninsured motorist coverage, and (b) to give any insured his or her just due. *See Fasulo v. State Farm Mut. Auto. Ins. Co.*, 108 N.M. 807, 780 P.2d 633 (1989); *Sandoval v. Valdez*, 91 N.M. 705, 580 P.2d 131 (Ct.App.1978). The majority opinion here does neither. Instead it gives the plaintiff Kaiser a windfall that he does not deserve. He knowingly, intelligently, and expressly rejected coverage. To allow him to make a claim now on the ground that he did not receive his policy in the mail because he provided Windsor with an incomplete address in the first place is a violation of both public policies.

In my view, the majority opinion gives a windfall to an undeserving plaintiff and punishes a defendant for the plaintiff's own error. I would affirm the summary judgment for Windsor. The majority holding otherwise, I respectfully dissent.