BOSSON, Justice (dissenting). {34} The Tenth Circuit certified the following question to us: “For a valid rejection of UM/UIM coverage under New Mexico law, must that rejection be written, signed by the insured, and attached to the policy?” Plaintiffs have urged us to answer in the affirmative. In other words, the rejection would have to be in writing, signed by the insured, and physically attached to the policy. The majority opinion comes to a different conclusion with which I partially agree. Correctly, the rejection does not have to be signed by the insured or attached to the policy because nothing in the statute or the insurance regulation requires either. And no opinion from this Court has ever required a signature or an attachment. In fact, physical attachment is only one of several ways to make the rejection a part of the policy; the policy can just say “UM coverage rejected” without any attachment and that should take care of it. {35} Our only dispute now reduces to whether the rejection must not only be made a part of the written policy (with which we all agree), but also whether that rejection must appear in a prior writing that precedes the policy. The majority opinion now requires, for the very first time, two writings — a kind of belt and suspenders approach. First, the insured must indicate in writing (but not necessarily sign it) his or her decision to reject UM coverage, and then, independently, the policy must also state the fact of rejection. {36} In our two consolidated cases, of course, the decision to reject is quite clearly stated in the policy, and there is no dispute about this. This is not simply a case of the policy not including or not mentioning UM coverage or being otherwise vague; both policies affirmatively reject UM coverage for their employees just as the law allows. All agree on this record that such a choice represented a conscious decision by the employer — the insured party and the owner of the policy' — to reject UM coverage for employees, however irresponsible that decision may have been. {37} What is not clear, however, is whether the insurer also issued a separate, initial document preceding the policy in which the employer first indicated its desire to reject. I suspect not, given that these employers are both commercial entities, likely accustomed to conducting their insurance business through agents, with advice of counsel, and in a less structured manner. The salient point, however, is that in both cases, the employer as insured stands behind its decision to reject coverage. Both insureds acknowledge their choice to reject UM coverage for them employees, a decision which each insured asks this Court to respect. {38} If freedom of contract means anything, it must be that — absent a statutory requirement of UM coverage — corporate employers like Lockheed and Capitol Motors are free to make a knowing, informed business decision about who not to insure and when not to insure them. They are free to choose. For as long as we have been a state, New Mexico has recognized the right of parties to contract as they see fit, especially in their business affairs. It is part of the common law we inherited, first from England, and then from 19th Century America before statehood. Freedom to contract remains firmly rooted in our jurisprudence. As a judiciary, exercising proper restraint, we do not interfere with such business decisions without clear guidance from either the legislature or an authorized executive agency. {39} Without much hyperbole, the freedom to contract is part of fundamental personal liberty. It cuts against that notion of liberty to be told that, although the law allows a company to reject UM insurance coverage for its employees and the company does so openly and knowingly, the courts are now going to countermand that business decision. It seems all the more offensive to interfere simply because of a lack of a second writing' — one the company did not need, did not ask for, and still does not ask for today. It is a writing that would not have made any difference in the context of these two cases. The majority does not dispute the futility of such an exercise in these two cases, a futility which Judge Parker acknowledges — and on which he appropriately relies — in the Capitol Motors case. If ever there was a hyper-technicality, this seems like one. {40} The majority takes the position that the insured’s intent is irrelevant; it boils down instead to the supposedly “clear” language of the statute and insurance regulation. The statute, of course, makes no mention of a writing; it only says the insured may reject UM coverage without any mention of the means of rejection — in writing, verbally, or I suppose by any other method. Curiously, the regulation says: “The rejection [of UM coverage] as required in writing by the provisions of Section 66-5-301 must be endorsed, attached, stamped or otherwise made a part of the policy.” Since the statute clearly does not require any such writing, we are left in some doubt as to what the regulation means. What is clear, however, is that the rejection must thereafter be made part of the written insurance policy, one way or the other. If there is a written rejection, it can be attached to the policy or duplicated within the policy. If the rejection is not in writing, like these two cases, then it must appear in writing as part of the policy. {41} Our case law attempts to fill the gap left by such an awkwardly phrased regulation. Time after time, we have said that an initial rejection of UM coverage, even if signed by the insured, is not good enough; it must thereafter appear in, or be attached to, or “otherwise made a part of’ the written policy. The insured must be given a second chance to reflect over a decision to reject UM coverage. See Romero v. Dairyland Ins. Co., 111 N.M. 154, 156, 803 P.2d 243, 245 (1990) (“Upon further reflection, consultation with other individuals, or after merely having an opportunity to review one’s policy at home, an individual may well reconsider his or her rejection of uninsured motorist coverage.”). Fair enough. And since context is everything in the law, just who are we trying to protect with this construction? More to the point, who is the Insurance Superintendent trying to protect by affording the insured this second chance? Josie Romero comes immediately to mind. {42} Upon reading the Romero opinion, one cannot forget the plight of poor Josie Romero, a 59-year-old widow, purchasing insurance for the first time, who did not even have a driver’s license. Although she had rejected UM coverage in writing, it was not made part of the policy, and she apparently had no independent understanding of what she had done. Correctly, the opinion makes reference to the need of insureds like Josie Romero who are “unsophisticated in business affairs,” those who need our help and the help of the Insurance Superintendent. Id. at 159, 803 P.2d at 248. I agree. It takes no great leap to conclude that Section 66-5-301 and the insurance regulation were written with the average individual and family in mind. The Insurance Superintendent was likely preoccupied with helping those who need our help, not those who do not. {43} Justice Ransom’s opinion in Romero makes clear that the requirement of a writing is not an end in itself but is designed to serve a remedial purpose: “so as to clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived.” 111 N.M. at 156, 803 P.2d at 245. The purpose of the regulation is to protect those who are easily preyed upon like Josie Romero. I do not believe Justice Ransom’s intent, or his language, can be read to apply to every case, regardless of the circumstances, regardless of the need. {44} Importantly, I do not read Justice Ransom to negate an insured’s choice when the insured, like Lockheed and Capitol Motor, seek to enforce that choice, not overturn it. Most of the case law on which he relies simply requires one written rejection, usually the policy itself if the initial rejection was oral. What purpose, other than to set a trap for the unwary, would there be in requiring not one but two writings, “so as to clearly and unambiguously call to the attention of the insured,” when a corporate “insured” like Lockheed or Capitol Motor is fully aware of “the fact that such coverage has been waived?” {45} This is indeed the point of friction. Most of our UM jurisprudence interpreting this statute and the insurance regulation derives from people like Josie Romero who truly need the “belt and suspenders” approach. Implicit in our opinions is the plight of the individual insured trying to come to terms with indecipherable insurance jargon and policies as dense as any jungle. Even when faced with a knowledgeable insured, we allowed the insured to rescind a rejection that had never found its way into the written policy. Kaiser v. DeCarrera, 1996-NMSC-050, 122 N.M. 221, 923 P.2d 588. {46} We have never, however, forced UM coverage upon an insured who had rejected coverage initially, that rejection appeared in the policy, and the insured went to court to defend that rejection. None of our case law has ever applied the insurance regulation to businesses like Lockheed and Capitol Motors who made an informed choice, knew what they were doing, put that choice in the policy, and now seek to ratify not abandon that choice in this litigation. None of our case law has ever said that, even though the rejection is clearly “part of the policy” as the regulation requires, the courts will vitiate that choice because (1) it was not preceded by an additional writing never before required, and (2) an employee who was not a party to the insurance contract now claims rights under the contract that his employer has expressly disavowed. {47} The Legislature or the Insurance Superintendent could make employees mandatory third-party beneficiaries of their employers’ insurance contracts. Employees could be given a place at the table when their employers negotiate insurance coverage to benefit the company. Labor unions might negotiate for such access to protect then-rank and file. All this is possible, and perhaps desirable, but completely missing from this ease. The Legislature or the Insurance Superintendent, not this Court, should make that decision. {48} When the employer knowingly decides not to purchase UM coverage for its employees, this Court has respected that choice. In Lucero v. New Mexico Public School Insurance Authority, 119 N.M. 465, 465, 892 P.2d 598, 598 (1995), a school employee driving a vehicle owned and insured by the school district was injured by an uninsured driver. She sued for uninsured motorist coverage from the school district. The school district, as the insured, had excluded employees from the policy’s UM coverage, though it is not clear from the opinion whether that rejection was in a separate writing or verbally. It did not seem to make any difference to this Court. {49} Recognizing that the named insured — the employer — had the right under New Mexico law to reject UM coverage, including for its employees, this Court affirmed that choice, noting that both the insured (the school district) and the insurer agreed (shared the intent) that employees were not included within the policy’s UM coverage. Justice Franchini wrote (Justices Frost and Minzner concurring) that, “When both the insurance company and the named insured agreed as to the identity of the third-party beneficiaries [employees] of an insurance contract purchased by the named insured, the court will enforce that interpretation of the contract.” Id. at 466, 892 P.2d at 599. Archunde v. International Surplus Lines Insurance Company, 120 N.M. 724, 729, 905 P.2d 1128, 1133 (Ct.App.1995), although factually more complex, came to a similar conclusion in which the named insureds, the school bus company and the school district, had rejected UM coverage for their employees. See also Jaramillo v. Providence Washington Ins. Co. 117 N.M. 337, 341-42, 871 P.2d 1343, 1347-48 (1994) (Ransom, J.) (“In cases in which the question is whether a third-party beneficiary is entitled to coverage, if the premium-paying insured and the insurer agree as to what they intended, that should be controlling.”). {50} In short, I would respect the clear, unambiguous, and uncontradicted intent of all parties to these insurance contracts to do as the law allows, and omit UM coverage for their employees. Even if I could be persuaded differently, I would still opt not to apply this opinion to the two employers before us. It seems unfair to do so in this instance. I cannot agree that this opinion was “foreseeable” to anyone who read our prior cases. Lockheed, in particular, appears to have done its homework and should not be faulted for relying on case law that emphasized inclusion of the rejection in the written policy, not in a second, separate writing. It is easy enough to say now that two writings have always been required. Suffice it to say that in these two consolidated cases alone, both district judges and a unanimous panel of the New Mexico Court of Appeals thought otherwise. I would give both Lockheed and Capitol Motors the benefit of considerable doubt as to any such requirement and apply our holding prospectively only.