2008-NMCA-138

194 P.3d 121

Timothy **MARCKSTADT,**
Plaintiff–Appellant,

v.

**LOCKHEED MARTIN CORPORATION MISSILES & FIRE CONTROL,** Mid–Century Insurance Company and Pacific Employers Insurance Company of Philadelphia, Pennsylvania, Defendants–Appellees.

No. 27,222.

Court of Appeals of New Mexico.

July 8, 2008.

Certiorari Granted, No. 31,258, Oct. 2, 2008.

Stephen E. Hosford, Martin, Lutz, Roggow, Hosford & Eubanks, P.C., Las Cruces, NM, for Appellant.

J. Monty Stevens, Stevens and Associates, El Paso, TX, Craig D. Gant, Gant & Hicks, P.L.L.C., Thalassia Mombeleur, Dallas, TX, for Appellees.

## OPINION

BUSTAMANTE, Judge.

{1} Plaintiff–Appellant's motion for rehearing is granted. The opinion filed in this case on June 6, 2008, is withdrawn and this opinion is substituted in its place.

{2} The question presented in this case is whether, under New Mexico law, the requirements for a valid rejection of uninsured motorist (UM) and/or underinsured motorist (UIM) coverage have been met when a business automobile insurance policy contains a written—but unsigned—endorsement indicating such rejection. The district court concluded that the unsigned endorsement constituted sufficient evidence of a valid rejection. We affirm.

**BACKGROUND**

{3} The facts of this case are not in dispute. Defendant Pacific Employers Insurance Company (PEIC) issued a business automobile insurance policy (the Policy) to Defendant Lockheed Martin Corporation (Lockheed) on September 1, 1998. Endorsement No. 8 to the Policy (the Endorsement) sets forth the status of UM/ UIM coverage in a variety of states. The Endorsement contains the following statement: "It is hereby understood and agreed that Uninsured/Underinsured Motorist Coverage is rejected in those [s]tates where permitted and minimum limits apply in all other [s]tates as designated below." Beneath that statement are three columns: "State," "Reject," and "Minimum Limits." The "State" column contains a vertical list of states represented by their two-letter initials. The "Reject" column displays the letter "X" next to certain states to indicate whether UM/UIM coverage has been rejected for that state. The "Minimum Limits" column contains a numeric notation (e.g. 50,000) that indicates the minimal recovery permitted by statute in states that do not permit an insured to waive UM/UIM coverage. There is a signature line for an "Authorized Agent" at the bottom of each page of the Endorsement.

{4} With respect to New Mexico, the "Reject" column contains an "X" next to the initials "NM," indicating that Lockheed rejected UM/UIM coverage in New Mexico. However, the Endorsement does not contain a signature or the initials of a Lockheed agent. Lockheed Vice President Walter Skowronski signed a separate UM/UIM coverage rejection form on February 2, 1999, several months after the Policy went into effect.

{5} On November 25, 1998, while the Policy was in effect but before Mr. Skowronski signed the UM/UIM rejection form, Timothy Marckstadt (Plaintiff) was injured in an automobile accident while in the scope and course of his employment with Lockheed. Plaintiff filed a civil suit against the Estate of Gerardo Rios, the driver of the vehicle that collided with Plaintiff, and recovered policy limits of $25,000. Plaintiff sought UIM coverage from Lockheed under the Policy. However, Lockheed stated that it believed it had lawfully rejected UIM coverage.

{6} Plaintiff brought suit against Lockheed and PEIC seeking declaratory relief regarding, among other things, whether Lockheed and PEIC have any obligation to provide Plaintiff UIM benefits under the Policy. Lockheed filed a motion for summary judgment in which it argued that it validly rejected UM/UIM coverage as evidenced by the Endorsement. PEIC filed an answer and counterclaim asserting the same argument.

{7} After several lengthy delays in the litigation, the district court held a hearing on Lockheed's motion for summary judgment on August 28, 2006. Counsel for Plaintiff argued that, in order for Lockheed's rejection

of UIM coverage to be valid, the Endorsement had to be signed and attached to the Policy. Counsel relied on New Mexico Administrative Code Section 13.12.3.9 regarding the proper method for rejection of UIM coverage. That section provides as follows:

The rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of [NMSA 1978, § 66–5–301 (1983)] must be endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance.

13.12.3.9 NMAC. During the hearing, the district court had the following exchange with Plaintiff's counsel:

COURT: [I]t is the Plaintiff's position that an endorsement has to be signed and that signature did not occur until after the accident. Is that a fair statement of your argument?

COUNSEL: That's fair. Yes, there had to be a signed rejection attached to the policy.

COURT: Why would that "or otherwise" clause [of Section 13.12.3.9 NMAC] not take care of that, "or otherwise" be made part of the policy?

COUNSEL: The way I read those regulations, it said it must be endorsed, attached....

COURT: It seems like it's not.... It has to be any one of them, it sounds like to me.

{8} At the conclusion of the hearing, the district court announced its decision from the bench:

Well, that regulation [Section 13.12.3.9, NMAC], it may not be the best written regulation I ever saw [sic]. But I think that "or otherwise made part of the policy," I think that this matter—that Lockheed has done that. Even though they call it an endorsement. Even though there may be a question as to whether that endorsement should be signed, I think it's clear that they intended to reject [UM coverage], and [the Endorsement] is otherwise made a part of the policy.

So with respect to that issue, I think that Lockheed prevails on that one.

The parties later confirmed with the district court that its grant of summary judgment to Lockheed would also apply to PEIC. The district court entered its order granting summary judgment in favor of Lockheed and PEIC on October 12, 2006. Plaintiff timely appealed from that order.

{9} Plaintiff sets forth two arguments on appeal: (1) Lockheed failed to timely reject UIM coverage prior to Plaintiff's injury and (2) public policy mandates that a selection/rejection form be signed and attached to an automobile insurance policy before rejection of UM/UIM coverage can be effective. Lockheed and PEIC respond that (1) Lockheed validly rejected UIM benefits under either Texas or New Mexico law and (2) this Court may affirm summary judgment on the alternative ground that Plaintiff received workers' compensation benefits that constitute Plaintiff's exclusive remedy under either Texas or New Mexico law.

{10} We note at the outset that the district court did not reach the exclusive remedy issue because it granted summary judgment on the dispositive issue of Lockheed's rejection of UM/UIM coverage. Because we affirm the district court's grant of summary judgment on that basis, we likewise do not reach the exclusive remedy issue. Additionally, because there was no argument below regarding whether Texas law should apply to the UIM coverage rejection issue, and because the district court made its decision on the basis of New Mexico law, we apply New Mexico law in our analysis of this case. *See Jim v. CIT Fin. Servs. Corp.*, 86 N.M. 784, 786, 527 P.2d 1222, 1224 (Ct.App.1974) (declining to address conflict of laws issue that was not raised in the district court).

## DISCUSSION

### Standard of Review

{11} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Phoenix Indem. Ins. Co. v. Pulis*, 2000–NMSC–023, ¶ 6, 129 N.M. 395, 9 P.3d 639 (internal quotation marks and citation omitted). We review the district court's decision to grant summary judgment de novo. *Id.* We also review ques-

tions of statutory construction de novo. *State Farm Mut. Auto. Ins. Co. v. Luebbers,* 2005–NMCA–112, ¶ 6, 138 N.M. 289, 119 P.3d 169, *cert. quashed,* 2006–NMCERT–010, 140 N.M. 675, 146 P.3d 810.

### New Mexico Procedure for Rejecting UM/UIM Coverage

{12} Rejection of UM/UIM coverage in New Mexico is governed by Section 66–5–301. Section 66–5–301 requires an insurer to provide UM/UIM coverage in an automobile liability policy unless the named insured rejects such coverage in accordance with the rules and regulations promulgated by the superintendent of insurance. *Romero v. Dairyland Ins. Co.,* 111 N.M. 154, 155, 803 P.2d 243, 244 (1990). As mentioned above, the applicable regulation is found at NMAC 13.12.3.9 and states:

> The rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66–5–301 … must be endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance.

Our Supreme Court has stated that Section 66–5–301 "embodies a public policy of New Mexico to make [UM] coverage a part of every automobile liability insurance policy issued in this state, with certain limited exceptions." *Romero,* 111 N.M. at 156, 803 P.2d at 245. The Court explained the purpose of the regulation as follows:

> The regulation that the rejection be made a part of the policy delivered to the insured quite apparently is to ensure that the insured has affirmative evidence of the extent of coverage. Upon further reflection, consultation with other individuals, or after merely having an opportunity to review one's policy at home, an individual may well reconsider his or her rejection of [UM] coverage. Providing affirmative evidence of the rejection of the coverage comports with a policy that any rejection of the coverage be knowingly and intelligently made…. For that reason [UM] coverage will be read into an insured's liability policy when a rejection of such coverage does not comply with those regulations.

*Id.* at 156–57, 803 P.2d at 245–46. The Court held that the insured in *Romero* did not validly reject UM coverage because, although she had signed an application indicating that she rejected the coverage, the application was never attached to the policy and she was never given a copy of the application. *Id.* at 157, 803 P.2d at 246. Therefore, the insured "had no independent way of knowing what she had signed." *Id.*

{13} While *Romero* clearly stands for the proposition that some affirmative evidence of rejection of UM/UIM coverage must be attached to an automobile liability policy in order for the rejection to be valid, *Romero* does not specify the nature of the evidence that must be attached. The question in the present case is whether an attached-yet unsigned—endorsement indicating rejection of UM/UIM coverage constitutes sufficient evidence of rejection. This appears to be a question of first impression in New Mexico.

{14} To answer this question, we first look to the plain language of the regulation. *Albuquerque Commons P'ship v. City Council of Albuquerque,* 2006–NMCA–143, ¶ 64, 140 N.M. 751, 149 P.3d 67, *rev'd on other grounds,* 2008–NMSC–025, 144 N.M. 99, 184 P.3d 411. "We give words their ordinary meanings, without adding terms the enacting body did not include, unless a different intent is indicated." *Id.* However, our Supreme Court has stated that Section 66–5–301 "is interpreted liberally to implement [its] remedial purpose, and any exception will be strictly construed." *Kaiser v. DeCarrera,* 1996–NMSC–050, ¶ 7, 122 N.M. 221, 923 P.2d 588.

{15} The regulation requires that "[t]he rejection … must be endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance." NMAC 13.12.3.9. As the district court noted, the disjunctive term "or" indicates that any of the listed methods of rejection will suffice on its own. Additionally, the phrase "otherwise made a part of the policy" suggests that: (1) the list is not exhaustive, and (2) that some form of physical attachment to, or inclusion within, the policy is an essential aspect of a valid rejection. Nowhere on the face of the regulation is the requirement that the rejection contain the insured's signature.

{16} Nevertheless, Plaintiff asserts that New Mexico public policy mandates that rejection of UM/UIM coverage take effect only at the time the rejection endorsement is signed and attached to the policy. In support of his position, Plaintiff points out that allowing a post-dated rejection of UIM coverage to apply retroactively would invite fraud. We agree with Plaintiff's position that a post-dated rejection is not valid. *See Gyori v. Johnston Coca–Cola Bottling Group, Inc.,* 76 Ohio St.3d 565, 669 N.E.2d 824, 827 (1996) ("To allow [the employer] to reject UM coverage after an accident would invite fraud and misrepresentation by corporate officers seeking low insurance rates."). However, we are less certain that a rejection must be signed in order to be valid under the regulation.

{17} In his motion for rehearing, Plaintiff urges us to follow *Farm Bureau Mut. Ins. Co. v. Jameson,* 472 F.Supp.2d 1272 (D.N.M. 2006) (memo), which held that a valid rejection of UM coverage "must be signed, written, and attached, stamped, or otherwise made a part of the policy." *Id.* at 1281 (internal quotation marks and citation omitted). We decline to follow *Jameson* for two reasons. First, and most important, the holding in *Jameson* that a valid rejection "must be signed"—which was not the focus of Judge Browning's decision in that case—is not supported by the text of NMAC 13.12.3.9. Second, *Jameson* is distinguishable from the present case because the insureds in *Jameson* apparently did not claim to have had knowledge of their waiver of certain UM coverage.

{18} The insureds in *Jameson* signed an application that listed limits for liability coverage, UM coverage, and medical payments coverage. 472 F.Supp.2d at 1275. The UM coverage limits were for the statutory minimum of $25,000 per person and $50,000 per occurrence. *Id.* The insureds never signed forms that specifically rejected UM coverage or stacking coverage. *Id.* The insureds' son was involved in an accident, and they sought to stack their UM coverage in an amount equal to the stated liability limits for their five covered vehicles. *Id.*

{19} Relying in part on Section 66–5–301 and NMAC 13.12.3.9, Judge Browning concluded that "New Mexico law requires an insurer to offer UM coverage up to liability coverage limits, to obtain a signed, written rejection of that level of coverage if the insured does not desire it, and to include such rejection in the insured's policy in some manner." *Id.* at 1280. We express no opinion regarding whether an insurer is required to offer UM coverage up to liability coverage limits because that issue is not before us. However, we disagree that Section 66–5–301 and NMAC 13.12.3.9 require that a valid rejection of UM coverage must be signed.

{20} As discussed above, the text of NMAC 13.12.3.9 makes no mention of a signature requirement. However, the regulation uses the disjunctive term "or," and allows a rejection of UM coverage to be "otherwise made a part of the policy." While *Romero* calls for affirmative evidence of an insured's waiver of UM coverage to be attached to or made part of the policy in conformance with the regulation, we are unaware of any authority requiring that such affirmative evidence contain a signature. The text of Section 66–5–301 and NMAC 13.12.3.9 does not compel that conclusion.

{21} Additionally, we note that the policy of providing affirmative evidence of rejection of UM coverage is inapplicable where the insured maintains that he or she never doubted whether UM coverage had been rejected. *See Vigil v. Rio Grande Ins. of Santa Fe,* 1997–NMCA–124, ¶ 24, 124 N.M. 324, 950 P.2d 297 ("[W]e decline to require an insurer to provide UM coverage in the face of clear evidence that the insured did not choose such coverage and knew it was not included in the policy."). *But see Romero,* 111 N.M. at 155, 803 P.2d at 244 ("[U]nless the named insured rejects such coverage in a manner consistent with the [regulation], [UM] coverage will be read into the ... policy regardless of the intent of the parties or the fact that a premium has not been paid."). There is no indication that the insureds in *Jameson* claimed to have known about their waiver of UM coverage despite the lack of evidence of their rejection of such coverage attached to the policy.

{22} In the present case, although Mr. Skowronski signed a rejection form after Plaintiff's accident took place, the Endorse-

ment was attached to the Policy from the date the Policy went into effect. Thus, if the attached Endorsement constitutes a valid rejection, Mr. Skowronski's post-accident signing of the rejection form is irrelevant. Plaintiff does not allege, nor does the record indicate, that the Endorsement is the product of fraud or lacks authenticity in any way. Moreover, Lockheed—the named insured—has always maintained that it understood it had waived UM/UIM coverage under the Policy.

{23} Under these circumstances, we cannot say that the Endorsement constitutes insufficient evidence of rejection. If we were to hold otherwise—i.e., that a signature is required for a rejection to be valid—we would be adding terms to the regulation. *Albuquerque Commons P'ship*, 2006-NMCA-143, ¶ 64, 140 N.M. 751, 149 P.3d 67. This we are unwilling to do. The Endorsement provides Lockheed with affirmative evidence of its rejection of UM/UIM coverage, and Lockheed has never questioned that rejection. We therefore conclude that the district court did not err in granting summary judgment in favor of Lockheed and PEIC.

{24} We emphasize that our holding today is limited to the facts of this case. We leave open the question of whether and how our analysis might have been different had a question been raised regarding the authenticity of the Endorsement. However, because Lockheed maintains that it always believed it had rejected UM/UIM coverage under the Policy, and because the Endorsement provided Lockheed with affirmative evidence of that rejection from the date the Policy went into effect, we conclude that the rejection complied with the regulation and was therefore valid.

## CONCLUSION

{25} The district court's order granting summary judgment in favor of Lockheed and PEIC is affirmed.

{26} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and MICHAEL E. VIGIL, Judges.