**Certiorari Denied, No. 31,705, June 10, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-069**

**Filing Date:    March 30, 2009**

**Docket No. 28,220**

**TINA MARIE WILLIAMS and
RYAN JOHNSON,**

     **Plaintiffs-Appellees,**

**v.**

**FARMERS INSURANCE CO.
OF ARIZONA,**

     **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
James A. Hall, District Judge**

Law Offices of Geoffrey R. Romero
Geoffrey R. Romero
Santa Fe, NM

Garcia & Vargas, LLC
Ray M. Vargas, II
Santa Fe, NM

for Appellees

O'Brien & Ulibarri, P.C.
Daniel J. O'Brien
Albuquerque, NM

for Appellant

**OPINION**

**CASTILLO, Judge.**

**{1}**  This case arises from an automobile accident between vehicles driven by Mark Anthony Chavoya (Chavoya) and Tina Marie Williams (Williams).  It is undisputed that Chavoya's negligence caused the accident, which resulted in Chavoya's death and injuries to Williams and another passenger, Ryan Johnson (collectively, Plaintiffs).  The car driven by Williams, a 2000 Kia Sephia, was owned by Misty Janati-Ataei, who is the daughter of Sheryl Janati (Janati).  Farmers Insurance Company of Arizona (Defendant) insured the Kia Sephia with Janati as the named insured on the policy.  Chavoya was underinsured, and Defendant denied Plaintiffs' uninsured/underinsured (UM/UIM) coverage under Janati's policy.

**{2}**  This appeal arises from the district court's order granting summary judgment in favor of Plaintiffs and allowing the coverage.  Defendant argues that Janati's policy does not include UM/UIM coverage for the Kia Sephia.  Because we conclude that the insurance contract did not validly reject UM/UIM coverage, we affirm.

## I.  BACKGROUND

**{3}**  Plaintiffs filed a complaint for damages against Defendant, among others, and argued that because Chavoya was uninsured or underinsured, Defendant was required to pay damages to "the extent of the available [UM/UIM] motorist coverage" in Janati's policy.  Defendant filed a motion for summary judgment contending, in relevant part, that Janati unambiguously rejected UM/UIM coverage.  Plaintiffs responded with a cross motion for summary judgment in which they argued that the rejection of UM/UIM coverage was invalid under New Mexico law.

**{4}**  The district court held a hearing, denied Defendant's motion for summary judgment, and granted Plaintiffs' opposing motion.  Defendant appeals.

## II.  DISCUSSION

**{5}**  The district court provided three reasons for granting Plaintiffs' motion for summary judgment:  (1) the rejection of UM/UIM coverage did not conform to the applicable regulation, (2) the rejection of UM/UIM coverage was not sufficiently clear, and (3) the policy appeared to provide for UM/UIM coverage in some areas but expressly denied such coverage in other areas.  Defendant disputes these conclusions and further argues that UM/UIM coverage cannot be imputed into the insurance contract to cover Plaintiffs because they are Class II insureds.  The parties do not argue that the material facts of this case are disputed, and we therefore review de novo the grant of summary judgment. *See State Farm Mut. Auto. Ins. Co. v. Jones*, 2006-NMCA-060, ¶ 6, 139 N.M. 558, 135 P.3d 1277 ("When the parties agree that the material facts are not disputed, this Court reviews the question of

2

law presented de novo."). We address the district court's basis for summary judgment as one argument: whether the policy adequately rejected coverage pursuant to 13.12.3.9 NMAC (11/30/01). We then turn to consider whether Plaintiffs' status as a Class II insured is relevant.

## A.   Rejection of UM/UIM Coverage

**{6}**   In New Mexico, automobile insurance policies are required to include UM/UIM coverage unless the named insured rejects such coverage. NMSA 1978, § 66-5-301 (1983). Rejection of coverage is governed by 13.12.3.9 NMAC, which states that "[t]he rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 . . . must be endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance." Our Supreme Court has explained that a

> rejection must be made a part of the policy by endorsement on the declarations sheet, by attachment of the written rejection to the policy, or by some other means that makes the rejection a part of the policy so as to clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived.

*Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990).

**{7}**   Defendant argues that the policy clearly and unambiguously alerted Janati to her rejection of UM/UIM coverage. In addition, Defendant contends that the present case is entirely disposed of by this Court's recent opinion in *Marckstadt v. Lockheed Martin Corp.*, 2008-NMCA-138, 145 N.M. 90, 194 P.3d 121, *cert. granted*, 2008-NMCERT-010, __ N.M. __, 201 P.3d 855. We begin with the language of the policy.

## 1.   Language of the Policy

**{8}**   The policy attached to the Kia Sephia contains a declarations page, a page explaining coverage designations and loss payable provisions, several pages of policy provisions, and twelve endorsements. Although the record indicates that Janati signed a waiver of UM/UIM coverage, the parties agree that the waiver was not attached to the policy. We therefore do not consider the waiver to be a valid rejection of UM/UIM coverage. *See Kaiser v. DeCarrera*, 1996-NMSC-050, ¶ 14, 122 N.M. 221, 923 P.2d 588 (holding that a signed waiver of UM/UIM coverage was insufficient evidence of rejection of such coverage when the insured did not receive a copy of the waiver).

**{9}**   Defendant argues that on the declarations page and in one of the attached endorsements, the policy clearly informed Janati that she had rejected UM/UIM coverage. Plaintiffs disagree, and they argue that the policy read as a whole fails to "clearly and unambiguously call to the insured's attention that [UM/UIM] coverage ha[d] been waived." We thus turn to examine the policy provisions.

**{10}**   On the declarations page, under coverage for "Uninsured Motorist," the policy has

3

the notation "NC*." There is no asterisk on the face of the page referring to or defining "NC," although directly above the columns listing coverage is an asterisk explaining that "* ENTRIES IN THOUSANDS OF DOLLARS." On the back of the declarations page, the policy explains that "'NC' or 'NOT COV' means 'NOT COVERED.'" Elsewhere on the front page is the notation "*NOC." An explanation at the bottom of the page indicates that "*NOC" refers to "NOT ON COMPUTER." Plaintiffs argue that these codes and asterisks are confusing, inconsistent, and subject to alternate interpretations.

**{11}** Also on the declarations page are a number of endorsement codes—apparently indicating, by number, which endorsements are attached to the policy. Plaintiffs point out that three of the endorsements refer to UM/UIM coverage. The first endorsement appears to amend certain exclusions from general UM/UIM coverage, which is listed in the policy's general provisions. The second endorsement amends one of the limits on liability for UM/UIM recovery. The third endorsement explains that UM/UIM coverage "is deleted from this policy."

**{12}** Plaintiffs contend that the confusing declarations page and the conflicting endorsements render the policy "inadequate on its face" to effectuate a rejection of UM/UIM coverage. We are not persuaded that the coding on the declarations page is unclear. The endorsements, however, are another matter. Even if a reasonable insured were to interpret the coding on the declarations page to mean that an accident with an uninsured or underinsured motorist was "not covered," that interpretation is at odds with two of the attached endorsements. Despite the final endorsement deleting UM/UIM coverage from the policy, the other two endorsements assume that UM/UIM recovery was available in some form.

**{13}** Defendant does not dispute this and points out that limited UM/UIM coverage was available because Janati carried UM/UIM coverage on another vehicle—a Pontiac Grand Am—that was also insured by Defendant. The UM/UIM coverage on the Pontiac Grand Am could be used to cover Janati and her family members (and no one else) in the event that they were in an accident with an uninsured or an underinsured motorist while driving the Kia Sephia. The second endorsement, amending the limits on liability for UM/UIM coverage, explains this "portability" concept.

**{14}** While Defendant's explanation for the inclusion of the second endorsement appears to make sense, it nevertheless fails to eliminate the resulting ambiguity from the contract. The requirement under *Romero* is that the rejection of coverage "clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived." 111 N.M. at 156, 803 P.2d at 245. In the policy at issue, the declarations page suggests that Janati is "not covered," and one endorsement says that UM/UIM coverage is "deleted." At the same time, another endorsement indicates—and Defendant does not dispute—that UM/UIM coverage is sometimes available. Although Defendant can explain the reasons for these conflicting provisions, the reasons are not clear from the policy, and these endorsements create an ambiguity. *See Rodriguez v. Windsor Ins. Co.*, 118 N.M. 127, 130, 879 P.2d 759, 762 (1994) ("Not many people who purchase automobile insurance comprehend esoteric legal and insurance concepts[.]"), *modified on other grounds by Montano v. Allstate Indem.*

4

*Co.*, 2004-NMSC-020, ¶ 1, 135 N.M. 681, 92 P.3d 1255.

**{15}**     Defendant points out that even if one endorsement does grant UM/UIM coverage under some circumstances, the endorsement deleting coverage contains language at the bottom that informs the insured that the restriction in the endorsement "supersedes and controls anything to the contrary." However, we fail to see how such language clears up any ambiguity created by the competing endorsements because each of the twelve attached endorsements contains the identical language at the bottom of the particular endorsement.

**{16}**     Defendant also argues that reading the endorsements in the present case to create an ambiguity imposes "impossible burdens" on insurance companies to "make no mention of coverages rejected by the insured." Defendant points to the general policy provisions, which include UM/UIM coverage, and argues that including the general provisions ostensibly creates an ambiguity with the final endorsement deleting UM/UIM coverage. We are unpersuaded. The final endorsement refers to the coverage included in the general provisions of the policy and deletes that coverage. There is no cause for confusion with those two provisions because the endorsement unambiguously deletes the coverage referred to in the general policy provisions. The endorsement acknowledging UM/UIM coverage under certain circumstances, however, is in direct conflict with the endorsement that purports to entirely delete such coverage. It is reasonable to expect an insurance company to provide its insureds with consistent information: either UM/UIM coverage is deleted "in its entirety" or the coverage is available under some circumstances. *See Romero*, 111 N.M. at 156, 803 P.2d at 245 (identifying the policy behind UM/UIM coverage as "to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists").

**{17}**     Accordingly, we conclude that the policy did not unambiguously convey to Janati the extent of her UM/UIM coverage. As a result, the rejection was not in accordance with the requirements of 13.12.3.9 NMAC, and UM/UIM coverage "will be read into the . . . automobile liability insurance policy regardless of the intent of the parties or the fact that a premium has not been paid." *Romero*, 111 N.M. at 155, 803 P.2d at 244.

**2.      *Marckstadt***

**{18}**     Defendant also argues that our recent holding in *Marckstadt* requires us to conclude that the endorsement deleting coverage in the present case was sufficient to satisfy 13.12.3.9 NMAC. In *Marckstadt*, the insurer issued a policy to the insured, which included an endorsement rejecting UM/UIM coverage. 2008-NMCA-138, ¶ 3. Before the insured signed a UM/UIM rejection form, the plaintiff was injured. *Id.* ¶ 5. The plaintiff sued both the insured and the insurer. *Id.* ¶ 6. The defendants argued that an endorsement, without a signature, was sufficient to reject UM/UIM coverage. *Id.* ¶¶ 6-7. This Court held that the unsigned endorsement was sufficient to satisfy the regulation

>           because [the insured] maintains that it always believed it had rejected
>           UM/UIM coverage under the [p]olicy, and because the [e]ndorsement
>           provided [the insured] with affirmative evidence of that rejection from the

5

date the [p]olicy went into effect, we conclude that the rejection complied with the regulation and was therefore valid.

*Id.* ¶ 24. Defendant argues that because the policy in the present case included an endorsement deleting UM/UIM coverage, *Marckstadt* controls and requires us to hold that Defendant sufficiently complied with 13.12.3.9 NMAC. We disagree for two reasons.

**{19}** First, in *Marckstadt*, the insured "always maintained that it understood it had waived UM/UIM coverage under the [p]olicy." 2008-NMCA-138, ¶ 22. In the present case, Janati testified that although she rejected UM/UIM coverage on the Kia Sephia, she believed that anyone riding in that car was covered by the UM/UIM coverage that she had purchased for the Pontiac Grand Am. Defendant contends that we should not consider Janati's deposition testimony because it constitutes extrinsic evidence that contradicts the terms of the agreement. Janati's testimony does not conflict with the terms of the agreement—the endorsements conflict with themselves. In addition, it is well settled that courts are permitted to "consider extrinsic evidence in determining whether an ambiguity exists in the first instance, or to resolve any ambiguities that a court may discover." *See Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 13, 129 N.M. 698, 12 P.3d 960. We observe that the insurance agent indicated in his deposition that it was his practice to explain that only the insured and family members are covered when the insured pays for UM/UIM coverage on a different vehicle, as was the case with Janati's coverage on the Pontiac Grand Am. Nevertheless, Defendant does not argue—and has never argued—that there exist disputed issues of material fact. Both parties submitted their motions for summary judgment for determination as a matter of law, and we consider the issue as such. *See Hydro Res. Corp. v. Gray*, 2007-NMSC-061, ¶¶ 14, 47, 143 N.M. 142, 173 P.3d 749.

**{20}** Second, in *Marckstadt*, there was no evidence of conflicting endorsements. This Court therefore had no reason to conclude other than it did—that the single endorsement provided the insured with affirmative evidence that it had rejected UM/UIM coverage. 2008-NMCA-138, ¶ 24. As we have explained, the policy in the present case did not adequately inform Janati that she had rejected UM/UIM coverage because the attached endorsements conveyed conflicting information. For these reasons, we consider *Marckstadt* to be distinguishable, and we are therefore not bound by its conclusions.

## B. Class I v. Class II Insureds

**{21}** Defendant's final argument rests on the distinction between a Class I and a Class II insured. In order to qualify as an "insured" under an insurance policy, "a party must either be a 'named insured' (Class I) or establish that they were a driver or occupant of a covered vehicle involved in the accident (Class II)." *Archunde v. Int'l Surplus Lines Ins. Co.*, 120 N.M. 724, 727, 905 P.2d 1128, 1131 (Ct. App. 1995). Our Supreme Court has further explained that "named insureds, their spouses, and relatives who live in the same household are [Class I] insureds" and that "[p]ersons who have no familial relationship to the named insured and are mere occupants of a vehicle covered by an [UM/UIM] policy are [Class II] insureds." *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 220, 704 P.2d 1092, 1096 (1985). In the present case, Janati and her family members are Class I insureds, while Plaintiffs are Class II insureds.

6

**{22}** Unless the Class I insured rejects UM/UIM coverage in accordance with the governing regulations, such coverage is read into the insured's automobile liability insurance policy irrespective of the intent of the parties or the lack of a paid premium. *Romero*, 111 N.M. at 155, 803 P.2d at 244. A Class II insured, however, is generally restricted "to recovering under the policy on the car in which they rode because the purchaser of the policy only intended occupants to benefit from that particular policy." *Schmick*, 103 N.M. at 220, 704 P.2d at 1096. Defendant argues that because the Kia Sephia carried no UM/UIM coverage, Plaintiffs, as Class II insureds, have no right or entitlement to recover. Specifically, Defendant cites *Mountain States Mutual Casualty Co. v. Martinez* (*Martinez*), 115 N.M. 141, 848 P.2d 527 (1993), and contends that UM/UIM coverage cannot be read into an insurance contract to cover Class II insureds—regardless of "any technical failure to comply with the [UM/UIM] statu[t]e and regulation."

**{23}** In *Martinez*, the plaintiff argued that as a Class II insured, she was entitled to recover under both the liability and the UM/UIM provisions of the insurance contract. *Id.* at 141-42, 848 P.2d at 527-28. The insurance contract included a liability offset provision, which required that any proceeds paid under the liability coverage be offset from the available UM/UIM benefits. *Id.* at 142, 848 P.2d at 528. Our Supreme Court concluded that "[t]his sort of contractual limitation does not breach public policy as applied to a Class II insured[.]" *Id.* at 143, 848 P.2d at 529. In the present case, because we have already determined that the insurance contract does not include a valid rejection of UM/UIM coverage, there is no valid contractual limitation on Class II recovery that is similar to the offset provision in *Martinez*.

**{24}** Instead, based on Defendant's failure to comply with 13.12.3.9 NMAC, UM/UIM coverage is provided under the insurance contract. *See Romero*, 111 N.M. at 155, 803 P.2d at 244. The Kia Sephia thus carried UM/UIM coverage, and Plaintiffs, as Class II insureds, are able to recover under the policy on the car in which they were riding. *See Schmick*, 103 N.M. at 220, 704 P.2d at 1096 (restricting recovery for Class II insureds to "the policy on the car in which they rode"). We therefore see no error in the district court's conclusion that Class II insureds should not be "treated differently [than Class I insureds] when there is a failure to comply with the regulations regarding uninsured motorist[s]."

## III.   CONCLUSION

**{25}** We affirm the district court.

**{26}   IT IS SO ORDERED.**

 

 

        **CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

 

**JAMES J. WECHSLER, Judge**

**LINDA M. VANZI, Judge**

**Topic Index for** *Williams v. Farmers Insurance Co.*, **No. 28,220**

**CP**          **CIVIL PROCEDURE**
CP-SJ          Summary Judgment

**CN**          **CONTRACTS**
CN-AM          Ambiguous Contracts

**IN**          **INSURANCE**
IN-IC          Insurance Contract
IN-MV          Motor Vehicle Insurance
IN-RI          Regulation or Insurance
IN-UM          Uninsured or Underinsured Motorist