# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2020-NMCA-009

Filing Date: October 7, 2019

NO. A-1-CA-35894

MARTIN SANCHEZ, Individually and
as Personal Representative for the
ESTATE OF CLIFFORD SANCHEZ;
PHIL SANCHEZ; and STEVEN
SANCHEZ, Individually,

      Plaintiffs-Appellants,

v.

ESSENTIA INSURANCE COMPANY;
and HAGERTY INSURANCE AGENCY,
LLC,

      Defendants-Appellees,

and

JOSE LUJAN and GILBERT SANCHEZ,

      Defendants,

and

CENTRAL MUTUAL INSURANCE
COMPANY,

      Defendant-in-Intervention.

APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY
Francis J. Mathew, District Judge

Certiorari Denied, January 3, 2020, No. S-1-SC-37992.  Released for Publication
February 11, 2020.

Atler Law Firm, P.C.
Timothy J. Atler
Albuquerque, NM

Cruz Law Office, LLC
Ernestina R. Cruz
Taos, NM

Sanchez Law Firm
Dennis T. Sanchez
Taos, NM

for Appellants

Rodey Dickason Sloan Akin & Robb PA
Jocelyn Drennan
Mark Mowery
Albuquerque, NM

for Appellee Hagerty Insurance Agency, LLC

Modrall Sperling Roehl Harris & Sisk PA
Tiffany Roach Martin
Michelle A. Hernandez
Albuquerque, NM

for Appellee Essentia Insurance Company

**OPINION**

**IVES, Judge.**

**{1}** Plaintiffs Phil Sanchez (Phil), Steven Sanchez, and Martin Sanchez, individually and as the personal representative of the Estate of Clifford Sanchez, sued Defendants Essentia Insurance Company and Hagerty Insurance Agency, LLC for denying uninsured and underinsured motorist (UM/UIM) coverage for the accidental death of Phil's son Clifford. The district court granted Defendants' motion for summary judgment, concluding that Phil had validly rejected UM/UIM coverage. On appeal, Plaintiffs argue, among other things, that Phil's rejection was not valid because Defendants waited over seven months to incorporate the rejection into his insurance policy. Because we agree with Plaintiffs that Defendants' delay deprived Phil of a fair opportunity to reconsider his decision to reject coverage, we reverse without reaching Plaintiffs' other arguments.

**BACKGROUND**

**{2}** The pertinent facts are undisputed. On July 20, 2010, Phil and his son Philip visited Defendant Hagerty's website to purchase automobile insurance for Phil's classic cars, a 1964 Ford Galaxie and a 1956 Ford Truck. Philip was assisting Phil, who did not use a computer or the Internet and did not attend to his personal affairs or pay his own bills because of his age. Phil and Philip selected UM/UIM coverage in the amount of

$100,000 per person and $300,000 per accident for bodily injury and $10,000 per accident for property damage. The cost of this coverage was fourteen dollars per month.

**{3}** On August 14, 2010, Phil signed a new coverage selection form rejecting all UM/UIM coverage. More than seven months later, on March 25, 2011, Defendants sent Phil a policy declarations form, which stated that Phil had rejected UM/UIM coverage for bodily injury but had purchased such coverage for property damage. The declarations form did not specify either the levels of coverage available or the premiums associated with each level of coverage. Over the next six months, Defendants sent Phil various documents, including renewal offers and policy declarations forms, indicating that he had rejected UM/UIM bodily injury coverage.

**{4}** On October 12, 2011, Phil's son Clifford, an insured under Phil's policy, was killed in an accident during an elk hunting excursion in Taos County. After Defendants denied UM/UIM coverage for damages related to Clifford's death, Plaintiffs sued, asserting that the denial was improper. Defendants moved for summary judgment, arguing that Phil had validly rejected UM/UIM coverage. After full briefing and a hearing, the district court granted Defendants' summary judgment motion. Plaintiffs appeal.

## DISCUSSION

**{5}** Plaintiffs argue that the district court entered summary judgment for Defendants based on a legal error. Specifically, Plaintiffs contend that Phil's rejection of UM/UIM coverage is invalid because Defendants deprived him of a fair opportunity to reconsider his decision to reject coverage by failing to provide him with a policy incorporating the rejection until over seven months after he had signed the rejection form. We agree.

**{6}** "Summary judgment is properly granted when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Arias v. Phoenix Indem. Ins. Co.*, 2009-NMCA-100, ¶ 6, 147 N.M. 14, 216 P.3d 264. We review the district court's summary judgment ruling de novo. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280.

**{7}** NMSA 1978, Section 66-5-301 (1983) governs UM/UIM coverage in New Mexico. Subsections (A) and (B) of the statute require insurance companies to "include in automobile policies UM/UIM coverage ranging from the minimum statutory limits . . . up to the limits of liability coverage contained in a policy." *Arias*, 2009-NMCA-100, ¶ 7 (citation omitted). The purpose of this requirement "is to put the insured in the same position he or she would have been in if the tortfeasor had liability coverage equal to the UM/UIM protection as provided by the insured's policy." *Id.* The requirement thus "embodies a strong public policy to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured and underinsured motorists." *Id.* (alteration, internal quotation marks, and citation omitted). Consistent with this public policy, Subsection (C) allows an insured to reject the UM/UIM coverage

described in Subsections (A) and (B) only if the rejection "satisf[ies] the regulations promulgated by the superintendent of insurance." *Arias*, 2009-NMCA-100, ¶ 8.

**{8}** Interpreting Section 66-5-301 and the applicable insurance regulations, our Supreme Court has held that a rejection of UM/UIM coverage is valid only if the insurer meets four "workable requirements" designed to ensure that rejections are the product of "realistically informed choice[s]" by insureds. *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 20, 149 N.M. 162, 245 P.3d 1214. The insurer must:

> (1) offer the insured UM/UIM coverage equal to his or her liability limits, (2) inform the insured about premium costs corresponding to the available levels of coverage, (3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject[.]

*Id.* ¶ 22. If the insurer fails to comply with one or more of these requirements, the insured's rejection of coverage is invalid, and "the policy will be reformed to provide UM/UIM coverage equal to the liability limits." *Id.*

**{9}** At issue here is the fourth requirement. We must determine whether, as a matter of law, the undisputed facts established that Defendants incorporated Phil's rejection into the policy in a manner that "afford[ed him] a fair opportunity to reconsider [his] decision to reject." *Jordan*, 2010-NMSC-051, ¶ 22. Whether an insurer's delayed incorporation may render a rejection invalid is a question of first impression in New Mexico.

**{10}** The incorporation requirement is based on Regulation 13.12.3.9 NMAC. *Jordan*, 2010-NMSC-051, ¶ 18. The regulation provides that "[t]he rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 . . . must be endorsed, attached, stamped[,] or otherwise made a part of the policy of bodily injury and property damage insurance." 13.12.3.9 NMAC. Our Supreme Court has explained how this regulation serves the purpose of ensuring that a rejection of UM/UIM coverage is knowingly and intelligently made:

> The regulation that the rejection be made a part of the policy delivered to the insured quite apparently is to ensure that the insured has affirmative evidence of the extent of coverage. Upon further reflection, consultation with other individuals, or after merely having an opportunity to review one's policy at home, an individual may well reconsider his or her rejection of uninsured motorist coverage. Providing affirmative evidence of the rejection of the coverage comports with a policy that any rejection of the coverage be knowingly and intelligently made. Any individual rejecting such coverage should remain well informed as to that decision.

*Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, ¶ 9, 111 N.M. 154, 803 P.2d 243; *accord Jordan*, 2010-NMSC-051, ¶ 18.

**{11}** In order to accomplish this purpose, New Mexico's appellate courts strictly interpret and apply the incorporation requirement. *See Romero v. Progressive Nw. Ins. Co.*, 2010-NMCA-024, ¶ 32, 148 N.M. 97, 230 P.3d 844, *aff'd sub nom. Jordan*, 2010-NMSC-051; *see also id.* ¶¶ 27-39. For example, we have held that an insurer failed to satisfy this requirement when the language in a policy "conveyed conflicting information." *Williams v. Farmers Ins. Co.*, 2009-NMCA-069, ¶ 20, 146 N.M. 515, 212 P.3d 403. Both our Supreme Court and this Court have concluded that rejections were invalid when insurers failed to physically attach rejections to the insurance policies provided to the insureds. *Romero*, 1990-NMSC-111, ¶¶ 17-18; *Arias*, 2009-NMCA-100, ¶¶ 1, 4, 12-13. And our Supreme Court has invalidated a rejection when the insurer "[i]ncorporat[ed] an on-line application into an insurance policy via buried language toward the end of a generic forty-nine page policy." *Jordan*, 2010-NMSC-051, ¶ 35. These precedents establish that an insurer's choices regarding the language used to incorporate a rejection and the placement of that language may deprive an insured of a fair opportunity to reconsider the decision to reject coverage.

**{12}** The same deleterious consequence can flow from an insurer's choice regarding the timing of the incorporation. New Mexico law seeks to protect the ability of insurance consumers to "knowingly and intelligently" make decisions about whether to purchase or reject UM/UIM coverage. *Romero*, 1990-NMSC-111, ¶ 9. The incorporation requirement cannot serve that purpose if an incorporation does not do what it is designed to do: provide the insured with a fair "opportunity . . . to fully reconsider any rejection of UM[/UIM] coverage." *Arias*, 2009-NMCA-100, ¶ 13. An unreasonable delay between rejection and incorporation deprives the insured of that opportunity. Memory fades with the passage of time, and an initially clear recollection of the reasons for rejecting coverage may eventually be supplanted by a general sense that the insured must have had a good reason for choosing to do so. The longer the delay, the more likely it is that the insured will no longer be able to recall information—such as coverage options and their respective costs—pertinent to the decision to reject, and the more likely it is that the incorporation, rather than enabling reconsideration, will do nothing more than remind the insured of a decision that has already ossified.

**{13}** It follows that an insured will be able to reconsider the initial decision in a meaningful way only if the insured receives the policy incorporating the rejection promptly after deciding to reject UM/UIM coverage. Prompt incorporation allows the insured to "fully reconsider," *id.* ¶ 13, the rejection at a time when the insured "remain[s] well informed as to that decision[,]" *Romero*, 1990-NMSC-111, ¶ 9, as well as to the considerations that produced it. By contrast, unreasonable delay defeats the purpose of the incorporation requirement: "afford[ing] the insured a *fair* opportunity to reconsider the decision to reject." *Jordan*, 2010-NMSC-051, ¶ 22 (emphasis added).

**{14}** Defendants argue that the delayed incorporation should only render the rejection invalid during the seven months that passed between the rejection and the

incorporation. Thus, Defendants contend, Phil's rejection became valid when Defendants finally incorporated Phil's rejection into the policy, and, because that incorporation occurred before the accident that caused the death of Phil's son, Phil had no UM/UIM coverage at that time. We are not persuaded. Defendants fail to account for the need for the insured to have the decision to reject and the reasons for making that decision fresh in his or her mind at the time of incorporation. Under Defendants' approach, an insurer could transform a rejection that is invalid for an extended period of time into a valid rejection whenever the insurer decides to incorporate the rejection into the policy, no matter how long the delay and no matter the likely effect of that delay on the ability of a reasonable insured to "fully reconsider," *Arias*, 2009-NMCA-100, ¶ 13.[1] New Mexico's UM/UIM legislation, regulation, and jurisprudence could not countenance such a holding, which would allow an insurer's delay to prevent an insured from knowingly and intelligently making the final decision about whether to reject coverage. That consequence would undermine the legislative purpose of including UM/UIM coverage in every policy absent a knowing and intelligent waiver. *See Romero*, 1990-NMSC-111, ¶ 9.

{15}    The delay between rejection and incorporation in this case deprived Phil of the fair opportunity to reconsider that New Mexico law guarantees to insureds. Seven months is too long a span of time to expect an insured to remember the initial reasons for rejecting coverage, the available UM/UIM coverage options, and the premium amount for each option. We hold that Defendants' delay rendered Phil's rejection invalid.

## CONCLUSION

{16}    We reverse and remand for further proceedings consistent with this opinion.

{17}    **IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MICHAEL D. BUSTAMANTE, Judge Pro Tempore**

---

1The shortcomings of Defendants' approach become apparent when we consider the hypothetical case of an insured who rejects UM/UIM coverage when purchasing a one-year insurance policy and an insurer that delays incorporating the insured's rejection into the policy until two days before the policy is set to lapse or be renewed. Then, the day after the incorporation, the insured is injured in an accident with an uninsured motorist. In such a case, Defendants' approach would require us to hold that the incorporation occurred "in a way that afford[ed] the insured a fair opportunity to reconsider the decision to reject," *Jordan*, 2010-NMSC-051, ¶ 22, even though the insured had just one day to do so, and even though that one day followed almost a year during which the insured lacked evidence of the decision to reject. That result cannot be reconciled with the policies underlying the law of UM/UIM coverage in New Mexico.